We have one case on our docket this afternoon. It's 25-60131 and I'm not sure I'll correctly pronounce it. Arquillo-Osorio. Mr. is it Conair? Okay, let's have you. Good afternoon, Your Honors. My name is Abdul Konar and I represent the petitioner in this case. Your Honor, I am here because I would like this court to reverse the decision of the immigration judge when he affirmed the decision of the asylum officer. In addition, and I believe that this court also erred in denying our state of removal in this case. So I would like not only this court to recognize that he erred in doing so and also because the judge failed to conduct a de novo review. And as a direct result of those two, Your Honor, decisions, my client has not been seen since he went to El Salvador. He has he has been arrested, he is detained, he has yet to speak to his family just because the judge failed to conduct a de novo review in this case. And in this case, Your Honor, just to give you a background in this case, we have a six-year determination. A reasonable fear interview was conducted in this case in 2019. After that was conducted, then COVID and DHS released my client. And then last year in 2025, so, sorry Your Honor, so that case was supposed to be sent to the judge for the judge to review the decision of the asylum officer. It never happened. Never. So last year, my client was picked up. And I just interrupt and just, oh, this is just a legal question. I appreciate that background. The Rule 28J brought up the Ninth Circuit Navarrete decision. And I didn't quite understand whether you're saying that decision is wrong or if you would distinguish it. You know, the Navarrete case saying the negative reasonable fear ruling here isn't actually a final order of removal that we can review. So it's the jurisdictional question, Your Honor. The jurisdictional question, Your Honor, in my opinion, has been settled. Because DHS, because DOJ waived that issue. So there is jurisdiction. Right, but that isn't really directly taking on the Navarrete case. Because I didn't see that case, you can disagree with me, to turn on the claims processing 30-day waiver. In other words, the Supreme Court, if I'm not mistaken, in Riley, told the government that it ought to waive for the set of claims where petitioners relied on past authority. But in Navarrete, the Ninth Circuit panel didn't say that's, that ruling is separate from the separate one where the government can't waive our obligation to look at our own jurisdiction. So how is it that we can review your challenge to the withholding case and the CAT issue? First of all, the Navarrete case just happened now. Yes. In March. And then we have the Bondi case that happened before. And when the case came to the circuit, it was a Bondi case. And during that time, the DOJ, the government, waived that issue. So... No, but you understand my point. They're waiving because the Supreme, I think, we'll hear from the government, but the Supreme Court urged them to for a small set of cases. That is correct. But that doesn't go to whether or not we have jurisdiction over this issue. I believe, Your Honor, you do. I believe you do have jurisdiction over the issue. You have jurisdiction over the issue because the case went from a reasonable fear interview to the IJ. Yeah. And then when the IJ denied the case, you don't go to the BI, you go straight to the Court of Appeals. And that's exactly what happened in this case. So I believe this Court has jurisdiction over it. But under 1252, what is the final order of removal? The final order for removal is when the immigration judge affirmed the decision of the asylum officer. That is my understanding of the case, Your Honor. So when the immigration judge affirmed that decision, then 30 days after that decision, this Court has jurisdiction. And we have abided by that rule, Your Honor. So let's take a step back. And I want to make sure I understand your position on each of the orders. Sure. So there's an original removal order, right, which is in 2017? That is correct. Okay. And that one was effectuated and your client was removed. That is correct. Okay. So that's the original order. Do you remember the month? Or just call it the 2017 order? It's 2017. He received a, his cancer removal was denied and the removal was effectuated in 2017. Great. We'll call that the 2017. That's the original removal order. Then in 2019, the Justice Department reinstates it. That is correct. He entered the U.S. again. That's great. And have you petitioned for review of the reinstatement order? No, not at that time. We didn't do that at that time, Your Honor, because at that time in 2019, the applicable rule, the applicable law at that time was you wait for the IJ to make a final decision before you bring that decision. So is your position that you could not have petitioned for review from the 2019 reinstatement order? That is my understanding, Your Honor. Okay, I agree with you. So you could not have petitioned in 2019? Right. And so instead, you seek withholding under CAT? Not quite yet, because we have to get over the RFI, so the reason for your interview. So because in 2019, they found a negative reasonable-feel interview. So now that decision went to the immigration judge. So had the decision of the immigration judge have been positive, yes, we would have been seeking withholding in CAT. But the only, so you're not even to the position of being able to seek withholding in your view? That is correct, Your Honor. So let me just, let's try to make the case easier. Sure. Suppose that you could seek withholding. Right. And it's denied. Do you agree that you couldn't seek review of CAT? Not at that time. Based on case law today, that is correct, Your Honor. Okay, so the 2017 order has been effectuated. The 2019 order is statutorily barred from our review. There, we didn't even get to withholding, but if you had, that would be barred from our review. So why would you be able to, in the middle, seek judicial review? Because that is what the regulations require. The regulations said that once the IG, immigration judge, affirmed the negative reasonable-feel interview, then you have the right to take that to the Court of Appeals. And that's exactly what we did. So your view is that you can petition for review of the negative RFI, even though you could not petition from the denial of withholding? That is correct, Your Honor. Says what case or statute? So it's always been the case, Your Honor. It's always been the case under the statute that after the denial of the reasonable-feel interview, you file the appeal straight to the Court of Appeals. It's always been that case. I'm asking for a statute. So 1252 says that you come to us on a final order of removal. That is correct. Are you aware of some authority that says that the denial of a reasonable denial, a negative RFI finding after an interview with an IJ, is tantamount to a final order of removal under 1252A? Perhaps not, Your Honor. Yes. No case since Nasrallah or Riley? No, not Riley. Because Riley is recent, Your Honor. I know, but Nasrallah too, sort of setting up this line of authority. That is correct. Yeah. And all of those cases are pretty recent. But I believe, Your Honor, this court has jurisdiction. This court has jurisdiction and if we did have jurisdiction, your primary argument on the merits is, I guess you have several, but one is the fear of the El Salvadoran government and torture in the prisons, correct? Your Honor, and we're not wrong in that so-called speculation because our client has been arrested since. But remind me how you responded to the 28-J citing Fuentes, our court's decision from January. Do you recall they brought attention to the Fuentes decision, published decision, January? Do you recall this? As far as the... As far as El Salvadoran prison operations could involve violence, but no, our court saying... Yes, I remember. Yeah. What's your thought about that? I remember that case. So first, we never had that opportunity, right? You do agree, Your Honor. We never had that opportunity. Well, I'm not saying I agree. Your argument is the COVID delay prejudiced you. That is correct. But I guess when you look at, if we're getting to the merits, when you look at the hearing, it did look like the I.J. said you want to update anything. That is correct. So go back to Fuentes. And given the fact that our client has been arrested when he went to El Salvador, show exactly what we fear. First, we have, number one, first, we have a sexual determination of the case, correct? And then in 2022, we have the state of exception in El Salvador that led to a fundamental changes in the country condition. Right. But the Fuentes court dealt with that, didn't it? Right. Now, but... So the distinguishing feature is your client was actually arrested upon return. That's the distinguishing feature. Not only that, my client is a former MS-13 gang member with tattoos. And these are the types of people who are being targeted in El Salvador, as you know. So it is individuals. It is individualized. So my client, he really fit everything that we were afraid of, Your Honor. And I truly believe that we would have been, we would have been, you know, hopefully, in our case, Your Honor, because we believe we had a great merit for our withholding NCAT case based on exactly all the characteristics that we have discussed in our case. That the client has. I'm guessing because of COVID, there were a lot of reasonable fear determinations that then couldn't get in front of an IJ for a bunch of years. Here, it was a whole... But when you're saying there was substantial prejudice, have you seen any other case law where a court said you were prejudiced because of the COVID delay? I believe this case was special, Your Honor, because we have a six-year determination. I know that. That is a very long time. And also, I was in the courtroom, Your Honor, when the IJ conducted a de novo review. This was not a de novo review at all. It was a mechanical reliance on the 2019 RFI. That's exactly what happened. This IJ barely asked any questions. I was there. And we had country conditions to back it up. Nothing was done. And to be honest, under, I would say, 120A31G, where the IJ has an obligation to conduct a de novo review, the IJ completely fell in this case. Completely. Back on the sort of jurisdictional question, your petition to us did not cite the reinstatement order as something you were petitioning from, and it didn't attach it. Do you agree with those two points? I believe it was in the certified admin record, the reinstatement order. You believe it was attached to your petition? I believe we made that point, that this was a review from the IJ. Because I didn't even see in your principal brief allegations that the reinstatement order was substantively flawed. It seemed like you were focused on the negative reasonable fear determination and CAT. That is. That is your focus. That is our focus. And I take it the reason is because you agree that you can't petition for review from the reinstatement order anyway. I think that's what you told me earlier. I don't mean to put words in your mouth, so tell me I'm misunderstanding. The reinstatement order, we don't have any issue with the reinstatement order. We don't. We're here because the IJ failed to conduct a de novo review. That's what we're here for. The reinstatement order is fine because we have a 2017 removal order and the respondent entered. So yes, the reinstatement order is proper, it's fine. We don't have any issue with that. Our thing is, after the negative reasonable fear interview, the immigration judge was supposed to conduct a proper de novo review and he failed to do so. That is our issue in this case, Your Honor. Thank you. Yeah.  Thank you, Your Honor. And that's what the Ninth Circuit did in Everett? It is, Your Honor. And that's also what Justice Thomas thoroughly explained and explained in his concurrence in Riley. I would just point out, it seems that the petitioner's arguments in favor of jurisdiction largely depend on his misconception that a negative reinstatement or a negative reasonable fear determination is a final order removal, which of course the Supreme Court explicitly held that it is not in Riley. That was the holding of Riley, is that an immigration judge's concurrence with a negative reasonable fear determination is not a final order of removal. And in Reed? Riley's reason, there are a bunch of issues undecided that are being litigated and I appreciate your, so I'm just curious from your sort of perspective, if the government hadn't done what you did and waived, where would we be? We would still be in the situation of a reinstatement order is not a final order of removal, which would preclude jurisdiction. And then the court would still have to be looking at whether the petitioner raised any argument to his actual reinstatement order and thus such that there would be the jurisdictional hook for consideration of the protection claims. Has any circuit post Riley disagreed with the Ninth Circuit's approach, the one you're advocating here? No, not yet, not to my knowledge. And has the Fourth Circuit ruled in Riley itself? I don't believe so, I haven't had any notice of the Fourth Circuit. So what should a petitioner do these days? As soon as they make their, within the 30 days they petition from the removal order. If they do want to pursue humanitarian relief, do they then ask to stay the underlying PFR? Yes, that's one option that the Supreme Court suggests. But is that what you see happening out there? Yes, we do see cases where individuals are now petitioning directly from their, or within 30 days of their reinstatement decision. Be careful there, reinstatement? So some people are concluding the reinstatement is a final order? You're litigating that? Yes, they're litigating that. I believe out of an abundance of caution, they are petitioning after the reinstatement order and then asking the court of appeals to hold the case. Has any court said that you can petition for review from a reinstatement order? There's the prior precedent from the circuits, which all sort of say. That's true, I guess we did it. Right. Can you help me understand? I genuinely don't get it. You probably have read, I dissented in one of our cases on this. I don't understand what this language means. The prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed. The alien is not eligible and may not apply for any relief under this subchapter, I'm sorry, under this chapter. And the alien shall be removed under the prior order at any time after reentry, 8 U.S.C. 1231 A5. What could that possibly mean? I don't understand how you could ever petition for review from that. I don't get it. Correct, Your Honor, and that's the government's position, is that there is no petition for review to the court of appeals from the reinstatement determination. Congress could have used exclamation points, I guess. Bolded language. It could have, but that language is extremely clear, and that makes sense in the statutory structure. Reinstatement happens after somebody has already been ordered removed. 1231 is about what happens after somebody has been removed. And Congress wanted to toe a hard line against illegal reentrance, which is what the Supreme Court recognized in Fernandez-Vargas. And so Congress meant to streamline and preclude judicial review. Are any courts going en banc to revisit their old law? Because Riley isn't a reinstatement case, but it sure suggests that it be this position you're taking. Do you know whether any courts have gone en banc? I'm not aware. Have you, has the government asked for en banc treatment? To my knowledge, we haven't received a decision in response to our argument about reinstatement determinations not being a final order. So I don't believe we're in the process yet that any court has weighed in such that we would consider asking for en banc. Do you know the cases, you've got that issue in front of our court in other cases? Yes, Your Honor, and we're making the argument in all of the circuits. So it is percolating. And notably, even before the government has been asserting this position, as Judge Oldham noted, and he dissented in the case, other judges on other courts and other courts themselves have pointed out that a reinstatement order determination just does not fit the statutory definition. Again, this is just, I'm appreciating your position and knowledge. What's the first-in-time case in front of our court where you're making this argument? I believe we made the argument in, I think it was Martina's last, which was argued last month. Is there anyone earlier than that? I'm not aware. I'm not sure. In either that case or this case, this court could reach that decision because, as your judge noted, yes, Riley did not involve a reinstatement order. But under this court's rule of orderliness, a Supreme Court case need not involve the same statute or even the same issue for a panel to conclude that its case law is unequivocally out of step with Supreme Court case law, which is the situation involving reinstatement orders. This court has previously said in Ojida-Tirazas that a fair reading of Section 1252 means that it has jurisdiction. But that kind of reasoning is fundamentally out of step with the Supreme Court's laser focus on the statutory definition of a final order. And so under this court's rule of orderliness, the conditions for this panel to conclude that the reinstatement determination is not a final order of removal exist. Even if the court were to conclude that it remains bound by that precedent or has jurisdiction, the government also asserts that the court lacks jurisdiction because the petitioner, as he conceded, does not challenge his reinstatement determination. Is there any sequencing issue there? Because the Ninth Circuit had the same posture, but they just ruled on... Correct, Your Honor. And no, as the Supreme Court has stated, there is no necessary sequencing of jurisdictional issues. However, it seems to me logical to first answer the question, what is a final order, and then to answer, if it is a final order, what do you have to do to challenge it? However, if this court were to... But it's a little illogical if he's not saying he's appealing from what could or couldn't be a final order. Correct, Your Honor. And in either case, the second question would remain out there for a different panel to consider because the Navarrete Justice Thomas concurrence logic would also apply in cases involving the pharaohs, which was Riley. So there are still questions to be answered. Do you have a sort of skinny 30-second informational response to when the Department of Justice would see a case as moot because of the removal of the non-citizen? Is that an easy or is that a really layered, hard question? It's actually surprisingly complicated, particularly in this circuit, which has Mendoza-Flores, which said that, in general, an individual's removal does moot the petition for review, but then subsequently distinguish that in Aguilar-Quintanilla. But the basis on which Aguilar-Quintanilla distinguished Mendoza are hard to follow, given that the Aguilar-Quintanilla pointed to the availability of a facilitation of return, which would have still been the policy at the time of Mendoza-Flores. Aguilar-Quintanilla also said that the petitioner in that case could have gotten CAP protection, so it was distinguishable on the facts. But in Mendoza-Flores, it was withholding only proceedings, which the individual could have gotten CAP protection. So under this court's case law, Mendoza-Flores, the petition would be moot. But under Aguilar-Quintanilla, which, to me at least, is somewhat difficult to reconcile, the case would not be moot. I have two questions about Aguilar-Quintanilla. So the court in that case says that the government agreed that it was not moot. So I'm not going back to read the briefs, but I've read the opinion very carefully, so I'm not sure I really understood. If I was on that panel, I would have expected the government to say, no, the general rule is that the removal does moot these proceedings, and so I was surprised to see that representation on the government's litigating position. So if you have clarity on that, that would be great. And then the other thing is that Aguilar-Quintanilla makes it sound like this is a settled position across the United States. I think it cites three, the CA-4, CA-10, CA-9, maybe, on the idea that removal does not moot the CAP claims. So I guess the two-part question is, what's the government's position? And then two is, what's the state of circuit precedent? Yes, I'm not sure why the government took the position in Aguilar-Quintanilla. I didn't handle the case, but one potential reason is because the courts of appeals had said in similar cases that removal did not moot the petition. We tried to take consistent positions across the circuits, but in this case, the government would agree that given that the petitioner does not challenge his reinstatement order and cannot challenge it, and in fact cannot challenge it, he specifically marked on the reinstatement notice that he did not want to challenge it. He also cannot challenge the prior order from 2017, both because it was unexhausted and it would be untimely at this point. The government has not waived the time bar as to that order. Can you help me understand how, in our Aguilar-Quintanilla decision, we block quote the 2012 ICE document that you referenced earlier, and it says that ICE will facilitate the removal of a removed alien when the aliens return to the United States, restores the alien to LPR status, which is obviously not what was going on in that case or our case or any of these cases as far as I know. Or, and this is I think the operative clause, the alien's presence is necessary for the continued administrative removal proceedings, which of course in any case that involves a reinstatement order is not applicable either. So what is the possible relevance of this policy directive? It doesn't seem particularly relevant in this specific case. Any considerations that go into whether DHS will facilitate return are extremely case-specific and involve considerations on the ground with foreign countries, and so I can't speak in general to what DHS may or may not do when they would choose to facilitate return. But in this case, certainly, it doesn't seem like any additional proceedings would be necessary. And just as a small side note on the petitioner's claims on the merits, as Your Honor noted, the immigration judge thoroughly gave the petitioner the opportunity to update his claim. And at no point during the six-year period between his reasonable fair interview and then the immigration judge hearing did the petitioner ask for a hearing. So there is no basis in the record for his claims of any kind of violation. Fuentes, there was a footnote reference to not being moved because of removal too. Do you recall that? Yes, Your Honor. And that was a different basis. That was just the collateral consequence aspect of it. Correct, Your Honor. And my reading of this court's case law is, in general, in considering whether cases move, the court looks to collateral consequences, such as a period of inadmissibility following from the order that's being challenged. But here, the petitioner is not challenging his reinstatement determination, and thus there would be no collateral consequences following from the orders that he does challenge, which, again, are not final orders of removal. If the court has no further questions, then the government respectfully requests that the petition for review be dismissed for lack of jurisdiction or alternatively denied on the merits. Thank you. Thank you. I'm back again, Your Honor. Your Honor, in 2019, when the Asama officer denied our client reasonable interview, and then he was later picked up in 2025, he was never asked whether the interview should happen again. He was picked up, and then directly the case went to the immigration judge. He was never asked. As a matter of fact, we asked for the Asama officer to conduct a new review, but they refused. And pretty much the words were, a 2019 interview took place, and there's no need to do so. And that's what happened. And also, Your Honor, our client is not seeking Asama. Our client is seeking withholding removal in CAD. And because of the CAD claim, our client, this court has jurisdiction because our client is seeking a CAD, withholding removal in CAD in this case. So to me, in my understanding of Quintanilla, Aguilar, Your Honor, this court has jurisdiction, Your Honor. Thank you. Thank you, Your Honor. Thank you. That will conclude our arguments this afternoon. This case is under submission. Thank you.